

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | No. 03 C 6851 |
| v. ) ) | Judge John W. Darrah |
| WHITEHALL HOTEL, LTD.; ) WHITEHALL RESTAURANT, INC.; and ) WHITEHALL HOTEL, LLC, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Equal Employment Opportunity Commission, filed suit against Defendants, Whitehall Hotel, Ltd.; Whitehall Restaurant, Inc.; and Whitehall Hotel, LLC, alleging violation of the American with Disabilities Act. The EEOC's charges stem from the treatment of one of Defendants' previous employees, Eric Oden. The EEOC also alleges that Defendants engaged in a pattern or practice of soliciting certain information from its applicants in violation of the ADA. Presently before the Court is Defendants' Motion for Summary Judgment.

## BACKGROUND

The Whitehall Hotel Restaurant, Inc. employed more than fifteen employees during each of the first twenty calendar weeks of 2001. (Plaint.'s 56.1(b)(3) Statement ¶ 1). In March 2001, Oden applied for and was hired as a cook at the Whitehall Hotel. (Id., ¶ 2). The job duties of the pantry cook position include: the preparation for salads, cold appetizers, desserts; partially working with cafeteria food; and partially setting up special events. (Id., ¶ 3).

In March 2001, Whitehall Hotel's employment application sought the following pertinent information:

> Can you perform job related functions without ( ) with ( ) reasonable accommodations?
>
> Please describe what reasonable accommodations are needed, if any:

(Def.'s 56.1(a)(3) Statement ¶ 7). In his employment application, Oden did not check either box in response to the first question and indicated "I am learning disabled adult" to the second inquiry. (Plaint.'s 56.1(a)(3) Statement ¶ 5). Oden was interviewed by three people when he applied for a cook position with Whitehall: Danella Walker, Thomas Belelieu, and Bart Hosmer. (Id., ¶ 6). Walker was aware of Oden's disability and considered Oden a learning disabled individual. (Id., ¶ 7). During his interview, Oden advised Whitehall that as an accommodation he would like to be able to take notes at his work station and keep the notes at his work station. (Id., ¶ 19). When he began his employment, Oden reported to Executive Chef, Bart Hosmer. (Plaint.'s 56.1(b)(3) Statement ¶ 20).

In late April 2001, Walker, of Human Resources, and Janine Falvo, the Head Chef, wanted to meet with Oden to discuss performance issues with Oden's work; Oden refused to meet with Walker and Falvo. (Def.'s 56.1(a)(3) Statement ¶ 16). On April 25, Falvo complained to Oden about his work performance. (Plaint.'s 56.1(a)(3) Statement ¶ 10). Falvo also had discussions with Walker about terminating Oden's employment because of his performance issues during this time frame. (Id., ¶¶ 23-24). That same month, Oden's mother wrote a letter to Belelieu wanting to address the performance-related issues raised with Oden on April 25, requesting a conference to discuss Oden's employment at Whitehall. (Id., ¶ 11). During this same time frame, Oden's mother

2

contacted Walker to discuss Oden's work at Whitehall. (Id., ¶ 12). Oden's mother wrote additional letters to Walker concerning Oden's work at Whitehall in May, July, and August 2001.

At some point between April and September 2001, Joseph Rosetti replaced Hosmer as the Executive Chef. (Def.'s 56.1(a)(3) Statement ¶ 11; Plaint.'s 56.1(b)(3) Statement 21). After his first meeting with Oden, Rosetti thought that Oden lacked knowledge of the products in the kitchen; lacked knowledge of the dishes he was preparing; lacked knowledge of the recipes he was preparing; and was inconsistent in the way that he worked, in his appearance, and in the way in which he worked with others. Rosetti had concerns about Oden's performance because Rosetti spent more time with Oden than any other employee. Rosetti wrote Oden up for a performance-related issue and for sleeping on the job. (Def.'s 56.1(a)(3) Statement ¶ 12). Oden acknowledges that he worked slower than others and that on occasion he required people to repeat instructions. (Plaint.'s 56.1(b)(3) Statement ¶ 18).

On April 29, 2001, following conversations with Oden's mother and in an attempt to address Oden's performance issues, Whitehall changed Oden's working hours, reduced his workload, and retained him for basic cooking skills. (Def.'s 56.1(a)(3) Statement ¶ 21; Plaint.'s 56.1(b)(3) Statement ¶ 27). Oden testified that the accommodation for which he asked and was not provided was more patience. (Def.'s 56.1(a)(3) Statement ¶ 20).

As a result of slow business conditions, including slow business conditions after the September 11, 2001 terrorist attack, Oden's hours were reduced. (Def.'s 56.1(a)(3) Statement ¶ 17).

3

Sometime after the reduction in his hours, Oden stopped calling in for work and did not return to Whitehall. (Id., ¶ 18). Whitehall made at least one attempt to contact Oden to notify him that he was placed back on the schedule after his last day in September 2001. (Plaint.'s 56.1(b)(3) Statement ¶ 17).

In November 2001, Whitehall changed its employment application, removing the above-quoted language regarding accommodations. (Def.'s 56.1(a)(3) Statement ¶ 9).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

Defendants argue that Plaintiff's claim for injunctive relief based on Whitehall's employment application should be denied because the application was changed in November 2001 and the alleged improper language was removed.

To obtain broad injunctive relief to enjoin the future use of a discriminatory practice, the plaintiff must establish that the employer is engaged in a discriminatory practice and/or that the

employer discriminated against an employee and the employer failed to prove that the violation is not likely to recur. *See EEOC v. North Gibson Sch. Corp.*, 266 F.3d 607, 621 (7th Cir. 2001) (*North Gibson*); *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1292 (7th Cir. 1993).

Here, the EEOC alleges that the application completed by Oden in 2001 violated the ADA by asking about any disabilities. Defendants dispute that the 2001 application violated the ADA. However, the Court need not reach the merits of that argument. The 2001 application was revised in November 2001, and the revised application no longer contains the objected language. Furthermore, Defendants have produced the revised application with the November 2001 revision date; and the Defendants' use of the application without the alleged discriminatory language has not been rebutted. Accordingly, the EEOC's claim for injunctive relief fails. *See North Gibson*, 266 F.3d at 621 (upholding dismissal of EEOC's claim for injunctive relief because the EEOC failed to identify discriminatory practice currently in use nor that it had a reasonable expectation that a discriminatory practice would be adopted in the future).

Defendants next argue that the EEOC has failed to establish a *prima facie* case of discrimination.

The ADA prohibits discrimination against a qualified individual with a disability "because of the disability of such individual in regard to job application procedures, the hiring, . . . job training, and other terms and conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff must first establish the threshold requirement that he has a disability as defined by the ADA. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (*Hoffman*). Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life

activities of such individual; (B) a record of such impairment; or (C) being or regarded as having such an impairment. 42 U.S.C. § 12102(2). Here, Defendants regarded Oden as being disabled.

In addition to establishing a disability as defined in the ADA, a plaintiff must also demonstrate that he is qualified for the position in question. A plaintiff is a qualified individual if: (1) he satisfies the prerequisites for the position, *i.e.*, he has the proper training and experience; and (2) he can perform the essential functions of the position with or without reasonable accommodations. *See Hoffman*, 568 F.3d at 572; 29 C.F.R. app. § 1630.2(m).

Defendants contend that Oden was unable to perform the essential functions of his position of cook with or without reasonable accommodations. Oden concedes that he had performance issues while employed as a cook with Defendants. Oden's supervisor, Rosetti, believed that Oden lacked the appropriate knowledge for his position and that Oden's work was inconsistent. Falvo also believed that Oden was not performing as he should. Furthermore, Oden's difficulties in his position continued although he requested, and received, an accommodation to take notes at his work station and keep such notes at his work station.

Plaintiff contends that even if he had the difficulties testified to, he may have been able to perform the essential functions of his job with additional accommodations. Defendants' additional accommodations following their determination that Oden was not able to perform his present position included changing Oden's hours, reducing his workload, and retaining him for basic cooking skills. The record is silent as to whether Oden was able to perform his new responsibilities. Furthermore, while Oden concedes that he refused to meet once with Defendants to discuss his performance issues, Defendants also concede that Oden and his mother attempted to further discuss the issues; and there is no evidence that any further attempts were made to determine what

6

accommodations may be put into place. Accordingly, a genuine issue of material fact exists as to whether Oden was able to perform the essential functions of his job with additional accommodations. *See Bultemeyer v. Fort Wayne Community Schs.*, 100 F.3d 1281, 1284-85 (7th Cir. 1996) (*Bultemeyer*) (reversing grant of summary judgment after finding that genuine issue of material fact existed as to whether plaintiff could perform his essential job functions with a reasonable accommodation).

The ADA requires "an employer to make whatever accommodations are reasonably possible in the circumstances to perform the functions essential to his position." *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996). "It is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Internet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). However, the reasonableness of an accommodation is best determined through a flexible, interactive process that involves both the employer and the employee. Furthermore, both parties must act in good faith. *See Bultemeyer*, 100 F.3d at 1285-87.

In the instant case, Defendants had provided Oden with the accommodations that he requested. After identifying that Oden still could not perform his job functions, Defendants "accommodated" Oden by changing his job functions and hours. However, genuine issues of material fact exist as to whether Defendants engaged in good faith in the interactive process in an attempt to determine the appropriate reasonable accommodation. The undisputed facts above demonstrate that Oden and his mother attempted to discuss Oden's performance problem, but questions remain as to whether Defendants actually engaged in an interactive process or simply

chose to change Oden's hours and responsibilities. Accordingly, genuine issues of material fact exist as to whether Defendants failed to accommodate Oden's disability.

Lastly, Defendants argue that back pay is not an appropriate remedy in the instant case. However, Defendants did not raise this argument until their reply brief. Accordingly, the argument is waived. *See Carmichael Payment Center, Inc.*, 336 F.3d 636, 642 (7th Cir. 2003).

For the reasons stated above, Defendants' Motion for Summary Judgment is granted in part and denied in part. Summary Judgment is granted as to Plaintiff's claim for injunctive relief and denied as to the remaining claim.

Dated: February 24, 2005

JOHN W. DARRAH
United States District Judge